ROSE McCARRICK *vs.* PATRICK J. KEALY.

Third Judicial District, Bridgeport, April Term, 1898.   ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In an action to recover damages for personal injuries caused by the bite of a dog, evidence of the declaration of the plaintiff that she had been bitten by the defendant's dog, made to her mother within five minutes of the injury, is but a narrative of a past event and inadmissible as part of the *res gestæ*.

It is not necessary to the institution or prosecution of a suit by *prochein*

*ami*, that the infant should have authorized or consented to the action.

[Argued April 28th—decided June 24th, 1898.]

ACTION to recover damages for personal injuries claimed to have been caused by the defendant's dog, brought before a justice of the peace and thence by the defendant's appeal to the Court of Common Pleas for Fairfield County, and tried to the court, *Downs*, *J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *Error and new trial granted.*

The plaintiff was described as a minor, who sued by Michael McCarrick, her natural guardian and next friend.

The trial court found the following facts: 1. On the 23d day of March, 1895, the defendant resided in the town of Fairfield, and was the owner and keeper of a large Newfoundland dog. 2. On said day the plaintiff, then of the age of sixteen years, in response to a message from the defendant's daughter conveyed to her by the defendant's son, John Kealy, then of the age of seven years, started from her parents' house to go across the fields to the defendant's house, accompanied by said John Kealy. 3. While passing through an open field the defendant's said dog attacked the plaintiff and bit her on the leg, just above the ankle. 4. The plaintiff immediately turned and went back to her parents' house, accompanied by the said John Kealy. 5. The time occupied by the plaintiff in going from the point where she was bitten to her parents' house, was less than five minutes. 6. Upon cross-examination she testified that upon reaching her parents' house and as she was entering the door thereof, she said to her mother in the presence and hearing of said John Kealy and a boy named Charles Stillson, "Kealy's dog bit me," and immediately proceeded to show her mother the wound. 7. The defendant claimed, and by cross-examination of the plaintiff (and subsequently by direct evidence) endeavored to show, that said dog did not bite the plaintiff, but that she had injured her leg by falling, while said dog was

running toward her in said field. 8. Said Charles Stillson was subsequently called as one of the plaintiff's witnesses, and testified that he saw the plaintiff coming out of the field opposite her parents' house, crying, and accompanied by said John Kealy; that he, the witness, met her at the door and followed her into the house. 9. The witness was then asked what, if anything, he heard her say at the time she entered the house, in reference to her leg, and answered, "Nothing, only that the dog bit her." To the admission of this evidence the defendant objected. The plaintiff claimed said evidence as a part of the *res gestœ*. The court admitted said evidence, and the defendant duly excepted. 10. Said John Kealy, having been called as a witness for the defendant, contradicted the plaintiff as to his having been with her when she was going through said field toward the defendant's house. 11. Upon cross-examination, without objection from the defendant, he corroborated said Charles Stillson, as to the plaintiff having told her mother that said dog had bitten her. 12. There was no eyewitness to the encounter between the plaintiff and said dog, except said John Kealy. 13. The plaintiff testified that she had no knowledge that her father, Michael McCarrick, intended to institute a suit for the recovery of damages for her personal injuries, and that said action had been instituted without her knowledge. 14. No other evidence was offered upon this subject, and the court finds that said suit was instituted in plaintiff's name by her father, without her knowledge or request.

The errors assigned in the appeal are the rulings of the court in admitting the evidence of the declarations of the plaintiff, Rose McCarrick, and in deciding that plaintiff was entitled to a judgment notwithstanding the action was instituted without the knowledge or consent of the minor.

*Stiles Judson, Jr.*, for the appellant (defendant).

*Elmore S. Banks*, for the appellee (plaintiff).

HALL, J. The decision of this case in the trial court depended upon the question of fact whether the plaintiff was

bitten by the defendant's dog, or was injured, as the defendant claimed, by a fall while she was running in the field. The plaintiff was the only witness who testified that she was bitten by the dog. What evidence was introduced by the defendant in support of his contention does not appear from the record before us.

As a part of the *res gestæ*, and against the defendant's objection, the court admitted evidence of the declaration of the plaintiff, made to her mother, within five minutes from the time she was injured, and as, crying, she was entering her parents' house, that Kealy's dog had bitten her. Proof of the fact that she was crying, or complaining of pain, would have been admissible to show that she was then suffering, but not her statement of the cause of the pain. To render such a declaration admissible as a part of the *res gestæ* it must characterize or explain some material act or occurrence which it accompanies. The *res gestæ*, the occurrence, which was material, was the act by which the plaintiff was injured. Her declarations made while the injuries were being inflicted, were a part of that occurrence, and if they characterized or explained it would have been admissible. If not made during the continuance of the act, but after the act by which she was injured had been completed, they were but a narrative of a past event; and evidence of such declarations was objectionable as hearsay. 1 Greenl. on Ev. § 108; *Enos* v. *Tuttle*, 3 Conn. 247, 250; *Noyes* v. *Ward*, 19 id. 250, 268; *Ford* v. *Haskell*, 32 id. 489, 492; *Rockwell* v. *Taylor*, 41 id. 55, 59. The same principle has been enunciated in many other decisions in this State.

The declaration which the court permitted to be proved, was not made while the injury was being inflicted upon the plaintiff, but after that act had been entirely completed, and after she had left the field where she was injured and was entering her parents' house. The only act which this declaration could be said to explain, was the immaterial one which it accompanied, of her returning to her parents' house, crying.

But it is said by the plaintiff that the defendant was not

harmed by the ruling of the court admitting the testimony of the witness Stillson, even if such ruling was erroneous, as both the plaintiff and the witness John Kealy testified without objection to the same declaration. There is much force in this claim. The mere fact of an erroneous ruling in the admission of evidence, does not entitle a party, as of right, to a new trial. A majority of the court, however, think that in this case the inadmissible evidence probably influenced the decision of the trial court.

The fact that this action was commenced by the *prochein ami* without the previous request or knowledge of the plaintiff, is immaterial. If the *prochein ami* could only prosecute the action by direction of the infant, her subsequent knowledge of the pendency of the suit and apparent acquiescence in its prosecution, furnished sufficient evidence of a ratification of his act. But it is not necessary that the *prochein ami* should have received authority from the infant, to enable him to sue in her name. The law which permits her to sue and appear only by her guardian or next friend, regards her at all times during her infancy as without sufficient knowledge and experience to properly decide when or how an action should be prosecuted for her benefit. " The law knows no distinction between infants of tender and of mature years; and as no special authority to sue is requisite in the case of an infant just born, so none is requisite from an infant on the very eve of his attaining his majority." *Morgan* v. *Thorne*, 7 M. & W. *400, *408. The *prochein ami* is regarded as an officer of the court by which, by statute in England, he was originally appointed. It is his duty to care for the interests of the infant in the institution and conduct of suits for his benefit, his power and responsibility in the performance of that duty being similar to that of guardians. Under our practice no previous appointment by the court is required, and the *prochein ami* named in the writ is permitted to appear and prosecute in the infant's name, though if he is not a proper person or fails to properly discharge his duties, the court may remove him and appoint another person in his place. Tyler on Inf. & Cov.

Fuller et Ux. *v.* Metropolitan Life Ins. Co.

§ 136; *Apthorp* v. *Backus*, Kirby, 407, 411; *Judson* v. *Blanchard*, 3 Conn. 579, 584.

There was error in the ruling of the court in admitting the testimony of the witness Stillson, objected to, and a new trial is granted.

In this opinion the other judges concurred.