DENISE M. ORSI ET AL. *v.* ROSE A. SENATORE, COMMISSIONER OF CHILDREN AND YOUTH SERVICES
(14799)

PETERS, C. J., BERDON, NORCOTT, KATZ and PALMER, Js.

Argued January 11—decision released August 2, 1994

*Linda Pearce Prestley,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman* and *Carolyn Querijero,* assistant attorneys general, for the appellant (defendant).

*Susan K. Smith,* with whom were *Hope C. Seeley* and, on the brief, *Kathleen M. Paul,* certified legal intern, for the appellee (named plaintiff).

*Lynn B. Cochrane* and *Jamey Bell* filed a brief for the Danbury Regional Commission on Child Care, Rights and Abuse et al. as amici curiae.

PALMER, J. The dispositive issue raised by this certified appeal is whether a foster parent has standing to bring an action on behalf of his or her foster child even though that child has been represented by a court-appointed guardian. The trial court determined that the plaintiff, Denise M. Orsi,[1] the foster parent of Christopher C., could not, as a matter of law, bring an action on Christopher's behalf to challenge the constitutionality of the regulations under which the defendant, Rose A. Senatore, the commissioner of the department of

---

[1] Denise Orsi brought this action in her individual capacity and as the next friend of Christopher C. In this opinion we will refer to Orsi as the plaintiff.

children and youth services (department),[2] had removed Christopher from the plaintiff's care and had placed him with his maternal grandmother. On appeal, the Appellate Court reversed the judgment of the trial court, concluding that the plaintiff had standing to challenge the defendant's decision placing Christopher with his grandmother. *Orsi* v. *Senatore,* 31 Conn. App. 400, 626 A.2d 750 (1993). We granted certification to appeal from the judgment of the Appellate Court[3] and now reverse. We conclude that the case must be remanded to the trial court for its determination of whether, under the facts and circumstances of this case, the plaintiff had standing to file the declaratory judgment action on Christopher's behalf as his next friend.

The relevant facts and procedural history are summarized as follows.[4] On February 12, 1989, Christopher was born to Deborah C. (mother), a single, fifteen year old woman. Christopher spent the first several months of his life in the hospital due to respiratory problems requiring surgery. Shortly after his discharge, Christopher was rehospitalized as a result of his mother's failure to administer proper medical care. The defendant thereupon sought an order of temporary custody. At that time, Christopher's mother and his father, Stephen P., admitted to allegations of homelessness and neglect. On May 31, 1989, the court issued an order of protective supervision to ensure that Christopher would have an appropriate and safe living environment,

[2] The department of children and youth services is now the department of children and families.

[3] We granted certification limited to the following questions: (1) "Does a foster parent have standing to make the legal claims of a foster child in [his or] her care?"; and (2) "Does the failure to provide a pre-removal administrative hearing procedure to foster parents in back-to-family placements violate the foster child's constitutional rights?" *Orsi* v. *Senatore,* 228 Conn. 908, 635 A.2d 1228 (1993).

[4] The facts and procedural history are set forth in detail in the decision of the Appellate Court. *Orsi* v. *Senatore,* supra, 31 Conn. App. 402–11.

and granted partial custody of Christopher to his grandmother, with whom his mother resided. The court also appointed attorney Stephen L. Mangan to represent Christopher at the proceedings concerning Christopher's custody and placement.

In June, 1989, Christopher was discharged from his second hospitalization and released to the joint care of his grandmother and mother. Because of his mother's progress in caring for Christopher, protective supervision was terminated in December, 1989. In March, 1990, however, the grandmother forced the mother, then again pregnant, and thirteen-month-old Christopher, to leave her home. The mother voluntarily placed Christopher in foster care, and the defendant appointed the plaintiff and her husband to be Christopher's foster parents.

Over the next several months, the defendant provided a range of family services in an effort to reunite Christopher with his mother, who was allowed to visit Christopher on a regular basis. Due to concerns about Christopher's safety and well-being, however, the defendant again applied for an order of temporary custody, which the court granted on October 3, 1990. In January, 1991, the court found Christopher to be uncared for and neglected, and committed him to the custody and guardianship of the defendant for a period of eighteen months pursuant to General Statutes § 46b-129 (d).[5] The mother was permitted only

[5] General Statutes § 46b-129 (d) provides in relevant part: "Upon finding and adjudging that any child or youth is uncared-for, neglected or dependent, the court may commit him to the commissioner of children and youth services for a maximum period of eighteen months, unless such period is extended in accordance with the provisions of subsection (e) of this section, provided such commitment or any extension thereof may be revoked or parental rights terminated at any time by the court, or the court may vest such child's or youth's care and personal custody in any private or public agency which is permitted by law to care for neglected, uncared-for or dependent children or youth or with any person found to be suitable and

strictly supervised visits with Christopher, who continued in the care of the plaintiff.

In April, 1991, the defendant informed the plaintiff that Christopher would be removed from her foster home and placed in the care of the grandmother. The plaintiff, concerned that the mother would have access to Christopher while the grandmother was at work, immediately brought an action seeking: (1) a writ of habeas corpus under General Statutes § 52-466 (f),[6] which confers standing upon foster parents to challenge a removal action by the department; (2) an injunction prohibiting the removal of Christopher by the defendant until it could be determined whether the planned removal and placement were in his best interests; and (3) a declaratory ruling on the constitutionality of § 17-37-4 (c) of the Regulations of Connecticut State Agencies, which provides that a request by a foster parent for an administrative hearing will be denied when the foster child is to be placed with a family member.[7]

worthy of such responsibility by the court. The commissioner shall be the guardian of such child or youth for the duration of the commitment . . . and in like manner, upon such vesting of his care, such other public or private agency or individual shall be the guardian of such child or youth . . . ."

[6] General Statutes § 52-466 (f) provides: "A foster parent or an approved adoptive parent shall have standing to make application for a writ of habeas corpus regarding the custody of a child currently or recently in his care for a continuous period of not less than ninety days in the case of a child under three years of age at the time of such application and not less than one hundred and eighty days in the case of any other child."

[7] Section 17-37-4 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) RIGHT TO A REMOVAL HEARING. (1) An approved or licensed foster parent may request a Removal Hearing if the child has been in continuous placement in the foster home for one year or more. Exception: The one year requirement shall not apply in cases where the foster parent is a relative. (2) Except in cases of imminent danger, the department shall notify the foster parent in writing at least 10 days before removal of its decision to remove the child from the foster home and of the foster parent's right to a removal hearing if he or she disagrees with the plan. . . .

"(c) DENIAL OF A REQUEST FOR A REMOVAL HEARING. A Removal Hearing will be denied by the hearings unit when (1) The child is being placed directly with the parent, parents, legal guardian, or other relative. . . ."

With respect to her application for a declaratory judgment, the plaintiff claimed that the challenged regulation violated both the state and federal constitutions in that it denied a child notice and opportunity to be heard when the department decides to place that child with a family member. The plaintiff indicated that she was not seeking custody of Christopher, but rather that she was only seeking, as Christopher's next friend, to enforce Christopher's constitutional rights.

On May 6, 1991, the trial court entered an ex parte order temporarily enjoining the defendant from removing Christopher from the plaintiff's care. Shortly thereafter, the court also granted the motion to intervene of attorney Mangan, who had been appointed Christopher's guardian ad litem and who had represented Christopher at the neglect proceedings.

On June 5, 1991, the defendant filed a motion to strike the next friend allegations of the declaratory judgment portions of the complaint on the ground that the plaintiff lacked standing to raise a legal claim on Christopher's behalf. The trial court concluded, as a matter of law, that the plaintiff could not bring an action on Christopher's behalf and, accordingly, granted the defendant's motion to strike.[8] On June 20, 1991, the trial court dissolved the temporary injunction and denied the plaintiff's application for a writ of habeas corpus on the ground that the plaintiff had failed to establish that Christopher's return to the care of the grandmother was not in his best interests.[9]

---

[8] The trial court concluded that the plaintiff's only recourse to challenge Christopher's removal and placement was a writ of habeas corpus under General Statutes § 52-466 (f). Because the court determined that the plaintiff did not have standing as a matter of law to bring an action on Christopher's behalf, it did not conduct an evidentiary hearing on the defendant's motion to strike.

[9] Christopher was thereupon returned to the care of the grandmother. He has remained committed, however, to the custody of the defendant.

The plaintiff appealed from the trial court's ruling that struck her request for a declaratory judgment.[10] The Appellate Court determined that, contrary to the conclusion of the trial court, the plaintiff has standing to bring the declaratory judgment action on Chris-

[10] The plaintiff has not appealed from the denial of her application for a writ of habeas corpus, so neither the propriety of Christopher's placement with the grandmother nor the need for a preremoval hearing is any longer at issue. We agree with the Appellate Court, however, that the claim that it violates Christopher's constitutional rights to remove him from foster parents and return him to his biological family without a preremoval hearing in which his foster parents could participate falls under the "capable of repetition but evading review" exception to the mootness doctrine. *Orsi* v. *Senatore,* supra, 31 Conn. App. 423–26. Although generally " 'it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow' "; *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571, 499 A.2d 1158 (1985); appellate review may be appropriate "where the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." Id., 572. "In deciding whether to invoke this mitigating principle, we have considered not only the practical difficulties of timely judicial review but also (1) the public importance of the question presented; (2) the potential effect of the ruling on an ongoing program of the state's penal or civil system; and (3) the possibility of a similar effect on the plaintiff himself in the future." (Internal quotation marks omitted.) *Moshier* v. *Goodnow,* 217 Conn. 303, 307, 586 A.2d 557 (1991).

All of these mitigating factors are present in this case. The plaintiff's challenge to the constitutionality of the regulations pursuant to which the department removes a foster child from foster care and places that child with a family member raises an important public issue. Our resolution of that issue necessarily will have a significant effect on the procedures followed by the department in returning foster children to their biological families. Finally, as the Appellate Court concluded, "[Christopher] is still committed to the custody of [the department], which has complete control over his placement. In the event his grandmother becomes unable or unwilling to care for him, [the department] may place him with another foster family and then with another family member without affording any preremoval notice or hearing. Under the circumstances, we cannot conclude that there is no 'possibility of a similar effect on [Christopher] himself in the future.' *Perry* v. *Perry,* [222 Conn. 799, 803, 611 A.2d 400 (1992)] . . . . [B]ecause [the department] has complete control over Christopher's placement, it is also possible that any contested placement would terminate before issues related to it could be fully litigated." *Orsi* v. *Senatore,* supra, 31 Conn. App. 426. We conclude, therefore, that this appeal is not moot.

topher's behalf. The Appellate Court further concluded that § 17-37-4 (c) of the Regulations of Connecticut State Agencies violates the federal constitution[11] because it deprives a child who has been in foster care for one year or more of an administrative hearing to challenge the decision of the department to place that child with a family member.[12]

The defendant claims that the Appellate Court improperly determined that the plaintiff had standing to serve as Christopher's next friend for the purpose of challenging the constitutionality of the regulations pursuant to which Christopher was removed from the plaintiff's care and placed with his grandmother. The defendant further contends that the trial court properly concluded that the plaintiff's only recourse to contest Christopher's family placement was an application for a writ of habeas corpus under § 52-466 (f). We agree with the defendant that the Appellate Court improperly determined that the plaintiff had standing as a matter of law to serve as Christopher's next friend. We disagree with the defendant, however, that the plaintiff's status as a foster parent necessarily precluded her from serving as the child's next friend. We therefore conclude that the case must be remanded to the trial court for a hearing on whether, under the facts and circumstances of this case, the plaintiff had standing to bring the declaratory judgment action on Christopher's behalf as next friend.

It is well established that a child may bring a civil action only by a guardian or next friend, whose respon-

[11] The Appellate Court did not consider the plaintiff's state constitutional claim because the plaintiff had failed to provide an independent analysis under the state constitution. *Orsi* v. *Senatore*, supra, 31 Conn. App. 427 n.19.

[12] The Appellate Court also concluded that "when a foster child reaches the critical stage at which [the department] plans to remove the child from a foster home in which he or she has resided for one year or longer, the child's counsel and guardian ad litem must have some notice of that plan before it is carried out." *Orsi* v. *Senatore*, supra, 31 Conn. App. 438–39.

sibility it is to "ensure that the interests of the ward are well represented." *Cottrell* v. *Connecticut Bank & Trust Co.,* 175 Conn. 257, 261, 398 A.2d 834 (1978); *Collins* v. *York,* 159 Conn. 150, 153, 267 A.2d 668 (1970). When a guardian has been appointed to protect the interests of a child, the guardian is usually the proper person to bring an action on behalf of the child. *Williams* v. *Cleaveland,* 76 Conn. 426, 434, 56 A. 850 (1904). There are, however, "certain exceptional circumstances"; *Cottrell* v. *Connecticut Bank & Trust Co.,* supra, 263; when a child "may properly sue by next friend, notwithstanding the existence of such guardian, as when the guardian is absent, or is unwilling or unable to institute or prosecute the required action or appeal, and especially when, though declining to take such action himself, he does not forbid such proceeding, or when he is disqualified by interest hostile to that of the infant, or is for other reasons an improper or unsuitable person to prosecute such actions on behalf of the ward." *Williams* v. *Cleaveland,* supra, 432. Although generally a person who brings an action as next friend need not obtain prior authorization from the court to do so; id., 433; *McCarrick* v. *Kealy,* 70 Conn. 642, 646, 40 A. 603 (1898); the court must determine whether the person seeking to represent the child as next friend is a proper or suitable person to make a claim on behalf of the child. *Williams* v. *Cleaveland,* supra, 433–34; *McCarrick* v. *Kealy,* supra, 646.

Because both a guardian and a guardian ad litem already had been appointed to represent Christopher's interests in the removal proceedings, the trial court was required to determine whether exceptional circumstances existed to warrant Christopher's representation by a next friend and, if so, whether the plaintiff was a proper person to serve in that capacity. The trial court failed to make such a determination, however, because it concluded that an application for a writ of

habeas corpus under § 52-466 (f) was the only legal remedy available to the plaintiff to contest the defendant's decision to return Christopher to the care of his grandmother. Although it is true that § 52-466 (f) afforded the plaintiff standing to challenge the defendant's placement decision by writ of habeas corpus, neither this statute nor our case law precludes a foster parent from also bringing an action as next friend on behalf of his or her foster child when warranted by exceptional circumstances.[13]

The Appellate Court concluded that the plaintiff had standing to serve as Christopher's next friend as a matter of law. We do not agree. In contesting the standing of the plaintiff to appear on Christopher's behalf, the defendant claimed that the plaintiff's interests were

[13] We disagree with the defendant that our decision in *Nye* v. *Marcus*, 198 Conn. 138, 502 A.2d 869 (1985), forecloses the possibility that a foster parent may bring an action on behalf of his or her foster child. In *Nye*, a case decided before the legislature adopted General Statutes § 52-466 (f), foster parents who were seeking to adopt their foster child filed an application for a writ of habeas corpus to challenge the decision of the department of children and youth services, the foster child's guardian, to name another couple as the child's adoptive parents. Reasoning that the foster parent's interests might well conflict with the best interests of the child, we held that the foster parents were "not an appropriate neutral party" to assert either their own interest in the maintenance of their family relationship with the foster child or the child's interest in remaining in their foster home. Id., 145. Our holding in *Nye*, however, should not be read as determining that, when foster children are to be removed from the foster home, foster parents always lack standing to assert the children's rights. In this case, the plaintiff has asserted that Christopher has a constitutional interest in not being returned to his biological relatives without affording his foster parents a preremoval hearing. As in *Nye*, the plaintiff may, however, not be an appropriate person to raise such a claim on Christopher's behalf, because her desire to have a preremoval hearing may conflict with Christopher's best interests. Nonetheless, the trial court must afford the plaintiff an opportunity to demonstrate that she is an appropriate person to raise Christopher's potential claim, and that, notwithstanding the appointment of both a guardian and a guardian ad litem for Christopher, exceptional circumstances exist to warrant the foster parent's representation of the foster child as next friend.

not consistent with those of the child, and that Christopher's interests had been properly represented by his guardian and guardian ad litem. Although acknowledging that "the decision of whether the next friend is a suitable person to represent the infant is a question for the trial court"; *Orsi* v. *Senatore,* supra, 31 Conn. App. 421; the Appellate Court nevertheless held that exceptional circumstances existed[14] and that the trial court had abused its discretion in concluding that the plaintiff was not a proper person to serve as Christopher's next friend. Id. Because the trial court improperly determined, however, that the plaintiff could not, as a matter of law, serve as Christopher's next friend, the court failed to exercise its discretion to consider whether exceptional circumstances existed to warrant the commencement of an action on Christopher's behalf and, if so, whether the plaintiff was a proper person to do so. The Appellate Court therefore should have remanded the case to the trial court to resolve those issues in the first instance.

We conclude, therefore, that the trial court must determine whether there were exceptional circum-

---

[14] The Appellate Court relied on *Cottrell* v. *Connecticut Bank & Trust Co.,* supra, 175 Conn. 257, for its determination that exceptional circumstances existed to warrant the filing of the declaratory judgment action by the plaintiff as Christopher's next friend. In *Cottrell,* we concluded that exceptional circumstances existed to warrant an action by the plaintiff's next friend when both the guardian ad litem and the conservator of the plaintiff, who had been adjudged incompetent, refused to take an appeal from the Probate Court's account of the administration of the plaintiff's deceased mother's estate, notwithstanding the plaintiff's request that an appeal be taken. We held that when "those appointed to protect the interest of an incompetent fail to appeal from a decision in which the incompetent has a real interest, an action may be brought by a next friend in order that a court may review the substantive issues involved." Id., 265. Our holding in *Cottrell,* however, should not be read as determining that when a ward's court-appointed guardian decides not to bring a claim or pursue an appeal, any person may appear as the ward's next friend to litigate the issue. Before a person may appear as next friend, the trial court must determine that the person is appropriate to represent the interests of the ward, and that exceptional circumstances exist to warrant the representation.

stances warranting the filing of the declaratory judgment action by the plaintiff as Christopher's next friend and, if so, whether the plaintiff, in light of her special interests as a foster parent, was a proper person to bring such an action. See *Nye* v. *Marcus,* supra, 198 Conn. 145. Because a court does not have subject matter jurisdiction over claims brought by persons who do not have standing; *Tomlinson* v. *Board of Education,* 226 Conn. 704, 717–18, 629 A.2d 333 (1993); we may not consider the merits of the declaratory judgment action until it properly has been determined that the plaintiff has standing to bring the action on Christopher's behalf. See *Sadloski* v. *Manchester,* 228 Conn. 79, 83–85, 634 A.2d 888 (1993).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand it to the trial court to determine whether the plaintiff had standing to bring the declaratory judgment action on Christopher's behalf.

In this opinion PETERS, C. J., and NORCOTT and KATZ, Js., concurred.

BERDON, J., dissenting in part. I agree with the majority that, notwithstanding the appointment of a guardian ad litem for a minor child, a foster parent may have standing to bring a suit on the child's behalf as his or her next friend. Nevertheless, I disagree with the majority's conclusion that the plaintiff does not have standing as a matter of law in this case, based on the undisputed facts before us.

In *Cottrell* v. *Connecticut Bank & Trust Co.,* 175 Conn. 257, 265, 398 A.2d 834 (1978), we held that if a guardian ad litem fails to take legal action to protect the interests of an incompetent person, then that person has standing to take that legal action himself or herself through a next friend. In the present case, the

guardian ad litem failed to challenge the constitutionality of § 17-37-4 (c) of the Regulations of Connecticut State Agencies. This regulation allows the defendant to remove a child from foster care and place him or her with a family member without providing notice and an opportunity to be heard to the child's foster parents, attorney or guardian ad litem. Because the child in this case, Christopher, "has a real interest" in obtaining a preremoval right to be heard for himself and his foster parents; id.; and because the guardian ad litem failed to assert this right on Christopher's behalf, Christopher had standing to assert this right himself through a next friend.

Furthermore, under the circumstances of this case, where Christopher's constitutional rights are at issue and it is against his family's interest to act as next friend on his behalf, I conclude that the plaintiff was entitled as a matter of law to act as his next friend. The plaintiff and her husband had been caring for Christopher for fourteen months, since he was thirteen months old. During the latter half of this period, Christopher's mother was permitted only strictly supervised visits with him because of concern over his safety. When the state decided to remove Christopher from foster care and place him with his maternal grandmother, the plaintiff became concerned for Christopher's safety because his mother would have unsupervised access to him while the grandmother was at work. The plaintiff has demonstrated a concern for Christopher's wellbeing and rights that entitles her, as a matter of law, to speak for him on the legal issue before us.

On the merits, I agree with the Appellate Court's well reasoned opinion that the failure of § 17-37-4 (c) to provide for notice and an opportunity to be heard prior to the removal of the child from the foster home violated the child's due process rights. The Appellate Court pointed out the importance of this issue, as fol-

lows: "Once a child has been in the foster home for one year or more; see Regs., Conn. State Agencies § 17-37-4 (a) (1); the relationship between child and foster parent has developed to the point where such a process can be meaningful. The foster parents, who have had daily contact with the child, have, at this point, become significant figures in the child's life. The child's removal from the foster home is clearly a critical stage in the commitment and a decision not to be undertaken by the agency without careful deliberation. By this time, the foster parents may have gained significant insights into the child and be in a unique position to offer information about the child or the proposed placement that will assist [the department of children and families] in its decision making. Their voices must be heard." *Orsi v. Senatore,* 31 Conn. App. 400, 438, 626 A.2d 750 (1993).

I also agree with the Appellate Court that, as a practical matter, this right to notice and, if necessary, a hearing will not greatly burden the state or interfere with the rights of the natural parents. Id., 438. Not every back-to-family removal will entail a hearing. Indeed, in most cases in which a foster parent disputes that such a removal is in the best interests of the child, the issues could probably be resolved by an informal conference between the interested parties.

Accordingly, I would affirm the Appellate Court's judgment.