# IN RE TAYQUON H.*
## (AC 23219)

Flynn, Bishop and Cretella, Js.

Argued January 13—officially released May 20, 2003

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Gary J. Wilson,* for the appellant (maternal grandmother).

*John Ashmeade,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Carl A. Massaro, Jr.,* for the minor child.

*Opinion*

BISHOP, J. The issue in this appeal is whether a child's maternal grandmother has standing to contest an order of temporary custody involving her grandchild when the child's mother, a minor, has a court-appointed guardian ad litem and is represented by an attorney. The resolution of that issue requires a discussion of the roles of guardian ad litem and attorney for the minor and the relationship between them when both are appointed for a minor in a juvenile matter. We affirm the judgment of the trial court.

I

The facts in this case are both unusual and sad. On April 4, 2002, the commissioner of children and families (commissioner) obtained an order of temporary custody (custody order) for S,[1] an eleven year old girl who was, at the time, six months pregnant. S had been sexually assaulted by a seventy-five year old man, regularly, for more than one year. When, in January, 2002, S had reported the assaults to her mother, C, C continued to allow the sexual perpetrator unsupervised access to the girl.[2] When a preliminary hearing was held on the custody order concerning S on April 11, 2002, C

---

[1] To protect the identity of the underage victim and her family, their names are not used in this opinion. See General Statutes § 54-86e.

[2] The perpetrator currently is serving a twelve year term of incarceration, having been convicted of one count of sexual assault in the first degree and one count of risk of injury to a child.

acceded to the order and, further, agreed to undergo treatment for her chronic alcohol abuse.

S entered foster care, began receiving prenatal care and education and, on May 23, 2002, gave birth to a boy, twelve weeks prematurely. On May 24, after a preliminary determination by the commissioner that the eleven year old mother could not meet the infirmed infant's specialized needs, the commissioner sought and obtained the custody order for the infant, subsequently named Tayquon.

In the custody order concerning Tayquon, the court appointed attorney Ellen A. Morgan as guardian ad litem for S and attorney Mary Claire Collier as the attorney for S. The court appointed attorney Carl A. Massaro, Jr., as attorney and guardian ad litem for the infant. On May 30, 2002, a preliminary hearing was held on the custody order for Tayquon. At that juncture, Morgan, as guardian ad litem for S, and attorney Collier were in accord to accede to the custody order for the infant on behalf of S. The grandmother, C, who was represented by counsel, sought, however, to contest the order. She presented the court with the argument that because S was her daughter and a minor, C automatically had standing as legal guardian to seek a ten day hearing on the custody order.[3] The commissioner argued in response that the presence of the guardian ad litem for S effectively usurped the role of the legal guardian for the purposes of the litigation, and, thus, C, the grandmother, had no standing to contest the custody order. The court ordered briefs on the subject and scheduled a hearing for June 11, 2002.

In their briefs, both the grandmother and the commissioner largely reiterated their arguments to the court.

_____

[3] General Statutes § 46b-129 (f) provides in relevant part: "Upon request, or upon its own motion, the court shall schedule a hearing on the order for temporary custody or the order to show cause to be held within ten days from the date of the preliminary hearing. . . ."

In his brief, Massaro, the attorney for Tayquon, argued that because no statute provided a grandmother (or any relative other than the biological or adoptive parents) with standing to contest an order of temporary custody, standing could be gained only by intervention.[4] Here, he argued, C had failed to file a motion to intervene, and, further, should one be filed, it should be denied because good reason exists for denying such a motion, namely, C's alleged neglect of S.

Collier, the attorney for S, who initially had supported the denial of standing for the grandmother at the May 30, 2002 hearing, later filed a brief in support of having a ten day hearing. She argued that the grandmother retained legal guardianship over S and, therefore, had standing and should be afforded an evidentiary hearing to contest the custody order. She wrote: "There would be no harm to the parties to allow the grandmother the right to a hearing concerning custody of [Tayquon]. The minor mother is in favor of her mother having a hearing concerning custody of the baby."

Morgan, the guardian ad litem for S, also filed a brief. She agreed with the commissioner and advocated a denial of standing for the grandmother. As to the conflict between herself and the grandmother, Morgan argued: "Once a [guardian ad litem] has been appointed for a minor child, the parent or legal guardian of the minor child loses the authority to assert the best interests of the minor child. That role belongs to the [guardian ad litem]."

On June 11, 2002, the parties reconvened and, after a brief oral argument, the court determined that the grandmother was not the guardian of S for the purposes of the present hearing and that she had no standing to contest the custody order. The grandmother subse-

---

[4] See General Statutes § 46b-129 (c).

quently filed this appeal.[5] In this court, attorney Gary
J. Wilson submitted a brief and made oral argument on
behalf of the grandmother. Assistant attorney general
John Ashmeade similarly argued and submitted a brief
on behalf of the commissioner. Although he did not file
a brief, Massaro, the attorney for Tayquon, presented
oral argument, with this court's permission. No one,
however, appeared or spoke on behalf of S. Neither
Collier nor Morgan filed an appellate brief or attended
oral argument. Additional facts will be introduced as
necessary.

## II

Historically, we have found that questions of standing
do not involve inquiry into the merits of a case, but
merely require assertions of injury to an interest that
is, arguably, protected by statute or the common law.
*Taff* v. *Bettcher*, 35 Conn. App. 421, 425, 646 A.2d 875
(1994). The question of standing raised by the grand-
mother is, therefore, a legal one. "When . . .the trial
court draws conclusions of law, our review is plenary
and we must decide whether its conclusions are legally
and logically correct and find support in the facts that
appear in the record." (Internal quotation marks omit-
ted.) *Fairfax Properties, Inc.* v. *Lyons*, 72 Conn. App.
426, 431, 806 A.2d 535 (2002).

Here, the grandmother seeks to contest the custody
order on behalf of her daughter, who is a minor. Her
claim rests on the assertion that as the legal guardian
of S, she can maintain an action on her daughter's
behalf, in this case, the request for the hearing on the

[5] We note with approval that the commissioner has not challenged the
party status of the grandmother to bring this appeal. Cf. *State* v. *Salmon*,
250 Conn. 147, 735 A.2d 333 (1999). The court found that the grandmother
was served properly. We believe that her interest as the natural guardian
of S, a minor, is adequate to accord her party status. Cf. Practice Book
(1998) § 26-1 (k) (2), now (h) (2); see also General Statutes § 46b-142 (b);
*In re Jonathan M.*, 255 Conn. 208, 764 A.2d 739 (2001).

order of temporary custody. As the grandmother's legal status is central to her claim, we discuss as a threshold consideration the general parameters of a guardian's duties and responsibilities.

General Statutes § 45a-606 provides that the mother and father of a minor child are, *de facto*, guardians of that child. General Statutes § 45a-604 (5) enumerates the rights and responsibilities of a guardian of a minor, including: "(A) [t]he obligation of [the] care and control [of the minor]; (B) the authority to make major decisions affecting the minor's education and welfare, including, but not limited to, consent determinations regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment; and (C) upon the death of the minor, the authority to make decisions concerning funeral arrangements and the disposition of the body of the minor . . . ." General Statutes § 45a-605 (a) provides guidance on the interpretation of those expansive duties: "The provisions of [§ 45a-604 inclusive]. . . shall be liberally construed in the best interests of any minor child affected by them . . . ." Arguably, the authority to make major decisions affecting the child's welfare intended to effectuate the child's best interest includes the authority to make legal decisions on behalf of the minor and would include, in this case, the authority to assert the child's legal rights in a court of law.

Reference to pertinent decisional law leaves no doubt that a guardian has the ability to assert his or her ward's legal rights. Although, generally speaking, a person has no standing to assert the rights of another,[6] when the parties include a guardian and a minor ward, as with a mother and daughter, the guardian is indeed entitled

[6] "It is axiomatic that due process rights are personal, and cannot be asserted vicariously." (Internal quotation marks omitted.) *Taff* v. *Bettcher*, supra, 35 Conn. App. 425.

to assert the legal rights of her ward. Our Supreme Court has opined: "It is well established that a child may bring a civil action only by a guardian . . . whose responsibility it is to ensure that the interests of the ward are well represented." (Internal quotation marks omitted.) *Orsi* v. *Senatore*, 230 Conn. 459, 466–67, 645 A.2d 986 (1994). From our review of relevant statutory and decisional law, it is clear as a general proposition that guardianship includes both the duty and responsibility to safeguard a minor's best interest as well as to protect the minor's legal rights.

In this case, we are mindful that the grandmother's claim to standing rests not only on those statutory and common-law bases, but that it also implicates a constitutional entitlement to family integrity. See *Pamela B.* v. *Ment*, 244 Conn. 296, 309, 709 A.2d 1089 (1998). "It is cardinal . . . that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. . . . [T]he most essential and basic aspect of familial privacy [is] the right of the family to remain together without the coercive interference of the awesome power of the state." (Citations omitted; internal quotation marks omitted.) Id., 309–10.

Nevertheless, this right to family integrity is not absolute. Our courts have long recognized that the state's intervention in family matters is justified when it is found to be in the best interest of the child. Id., 310. Our statutes authorize such intervention when it is found, inter alia, that a child has been neglected or uncared for. General Statutes § 46b-129 et seq. "[Parents'] rights are not absolute rights; they may be forfeited by their own conduct. The relation of parent and child is a status not a contract, and that status may be altered or abrogated by the State as *parens patriae* in the interests of society. The welfare of the child is

paramount to all other considerations, and the right of the parent to its . . . control must yield to the State when, because of the neglect of its natural guardians, the State assumes its guardianship and protection." (Emphasis in original.) *Goshkarian's Appeal*, 110 Conn. 463, 468, 148 A. 379 (1930).

The appropriateness of the state's intervention under the unfortunate facts of this case can hardly be seriously questioned. We need not linger, therefore, on whether the state's intervention was warranted. From a child's perspective, family integrity consists of nurturance and protection. It is not conceptual; rather it is practical and tangible, moment by moment.

Determining the respective rights of S's mother and the guardian ad litem to speak for S's best interest and to assert her rights is complicated, in this case, by the fact that the court additionally appointed counsel for S. Given the status of S as both a parent and a child, our observation that the court appointed both counsel and a guardian ad litem for S should not be taken as criticism. To the contrary, we note that the court has broad discretion to appoint counsel and guardians ad litem for minor parties. In particular, General Statutes § 46b-136 provides in relevant part: "In any proceeding on a juvenile matter the judge before whom such proceeding is pending shall, even in the absence of a request to do so, provide an attorney to represent the child or youth . . . if such judge determines that the interests of justice so require . . . ." Additionally, General Statutes § 45a-132 provides in relevant part: "(a) In any proceeding before a court of probate or the Superior Court . . . the judge or magistrate may appoint a guardian ad litem for any minor or incompetent, undetermined or unborn person . . . . (b) The appointment shall not be mandatory, but shall be within the discretion of the judge or magistrate."[7]

_____

[7] We disagree with the commissioner's claim that the provisions of General Statutes § 46b-129a provide authority for the appointment of counsel and

Because the court appointed both a guardian ad litem and counsel for S, the question before us is whether the certain right that would allow S's mother to assert her daughter's legal right to a hearing on the order for temporary custody has been superseded by the appointment of a guardian ad litem by the court, and, additionally, whether the answer to that question is impacted by the appointment of a lawyer to represent the daughter as well. Answers to those interrelated questions implicate the parameters of the guardian ad litem's role in juvenile proceedings and the relationship of the guardian ad litem to counsel when one is separately appointed.

We begin our analysis in that regard with the observation that nowhere in our decisional law or statutes are the duties and responsibilities of a guardian ad litem delineated. The actions of S's representatives in response to the issue of standing raised by S's mother evince confusion on the question of their respective roles and the delineation between them.[8]

Our Supreme Court has declined to formulate general instructions for either counsel or guardians ad litem in such situations. In *Schult* v. *Schult*, 241 Conn. 767, 769, 699 A.2d 134 (1997), the Supreme Court deliberated the

a guardian ad litem for a minor parent in this setting. We believe, rather, that § 46b-129a relates to the appointment of counsel and guardian ad litem for the child whose protection is the object of a petition and not a parent who also happens to be a child, as is the case here.

[8] Evidence of the confusion comes from the fact that the guardian ad litem submitted a brief to the court on the question of the grandmother's standing to request a hearing on the order of temporary custody. Also, as noted, neither counsel nor the guardian ad litem for S participated in the appellate proceedings. We note, too, that the record is silent as to whether the trial court issued any specific instructions to the guardian ad litem or to the attorney on their respective roles at the time they were appointed.

In fairness, we acknowledge that jurisprudence on the subject has been sparse and that both court-appointed guardians ad litem and attorneys provide invaluable services to the children of Connecticut and the judicial system alike, and are, generally speaking, grossly underpaid, if paid at all.

question of whether, when a child had the representation of a guardian ad litem as well as counsel, it was permissible for counsel to advocate a position contrary to that of the guardian ad litem. The court eschewed a bright line rule, holding "that it is within the trial court's discretion to determine, on a case-by-case basis, whether such dual, conflicting advocacy of position is in the best interests of the child."[9] Id., 777.

In *Ireland* v. *Ireland*, 246 Conn. 413, 717 A.2d 676 (1998) (en banc), our Supreme Court took up the question of the roles of a minor's representatives when both a guardian ad litem and an attorney are present. The court added definition to the role of counsel for a minor child by stating that the attorney's role when representing a minor should mirror as closely as possible the attorney's role when representing "unimpaired adults." Id., 438.

Subsequently, in its 2001 session, the General Assembly, in Public Acts 2001, No. 01-148, § 1, amended General Statutes § 46b-129a (2), regarding the appointment of counsel and guardians ad litem, to provide in relevant part that in a proceeding under § 46b-129, "a child shall be represented by counsel knowledgeable about representing such children who shall be appointed by the court to represent the child and to act as guardian ad litem for the child. The primary role of any counsel for the child including the counsel who also serves as guardian ad litem, shall be to advocate for the child in accordance with the Rules of Professional Conduct.

---

[9] When a guardian ad litem is appointed, the court concluded that, while "*ordinarily* the attorney should look to the guardian [to ascertain the best interest of the minor-ward]"; (emphasis in original) *Schult* v. *Schult*, supra, 241 Conn. 783; such action is not required in every case. The court further concluded that "[l]eaving the determination to the sound discretion of the trial court is particularly important in [these] difficult cases . . . . The trial court is in the best position to evaluate the child's need for representation as the case and the evidence unfold." Id., 780–81.

When a conflict arises between the child's wishes or position and that which counsel for the child believes is in the best interest of the child, the court shall appoint another person as guardian ad litem for the child. The guardian ad litem shall speak on behalf of the best interest of the child and is not required to be an attorney-at-law but shall be knowledgeable about the needs and protection of children. In the event that a separate guardian ad litem is appointed, the person previously serving as both counsel and guardian ad litem for the child shall continue to serve as counsel for the child and a different person shall be appointed as guardian ad litem, unless the court for good cause also appoints a different person as counsel for the child. No person who has served as both counsel and guardian ad litem for a child shall thereafter serve solely as the child's guardian ad litem. . . ." General Statutes § 46b-129a.

Our review of *Schult* and *Ireland* and that subsequent legislation instructs us that in the protection of a child who is the subject of a § 46b-129a petition, the court, in the first instance, must appoint a person to serve as guardian ad litem and counsel for the child, who is to be charged with protecting the child's best interest as well the child's legal rights in the process. It also is clear from that review that the obligation of the person appointed as counsel is shaped by the Rules of Professional Conduct, which, in pertinent part, obligate counsel to abide by a client's decisions concerning the objectives of representation. See Rules of Professional Conduct 1.2 (a).[10] It is when counsel perceives that this obligation is in conflict with the child's actual best interest that counsel must bring that to the court's attention, and the court, in turn, must appoint a separate guardian ad litem to protect and to promote the child's

---

[10] But see Rules of Professional Conduct 1.14, titled "Client under a Disability," authorizing counsel to seek the appointment of a guardian when a client's ability to make an adequately considered decision is impaired.

best interest in the process.[11] Neither the cases nor the legislation, however, discuss the manner in which a guardian ad litem's duties should complement those of the attorney. The case before us further implicates questions concerning the role and responsibilities of a guardian ad litem, both in relation to the minor's natural guardian as well as to the minor's attorney.

It is well established that the role of the guardian ad litem is to speak on behalf of the best interest of the child. Although the term "best interest" is elusive to precise definition, one commission study aptly observed that "[t]he best interests of the child has been generally defined as a measure of a child's well-being, which includes his physical (and material) needs, his emotional (and psychological) needs, his intellectual and his moral needs."[12] The specific duties of the guardian ad litem necessary to execute that general mandate properly have been suggested by many experts and advisory committees. Some of the commonly discussed duties include investigation of the facts necessary to get a clear picture of the child's situation, a determination of the child's best interest, frequent communication with the child and the court, and the making of recommendations to the court through testimony.[13]

[11] We recognize that those cases and the 2001 amendment to General Statutes § 46b-129a concern the appointment of counsel and a guardian ad litem for a child who is the subject of a petition and not for a child who is the parent of an infant. Given the unfortunate reality, however, that the status of being a child as well as a parent in a juvenile proceeding is not a rarity, we believe a discussion of the respective responsibilities of counsel and guardian ad litem for a child, here, is equally germane.

[12] Quebec Bar Committee, "The Legal Representation of Children: A Consultation Paper Prepared by the Quebec Bar Committee," 13 Can. J. Fam. L. 49, 54 (Robin Ward trans.) (1996).

[13] See R. Heartz, "Guardians Ad Litem in Child Abuse and Neglect Proceedings: Clarifying the Roles to Improve Effectiveness," 27 Fam. L.Q. 327, 341–46 (1993); see also American Academy of Matrimonial Lawyers, Representing Children (1995) p. 4.

We also find useful principles that have been advanced by the National Court Appointed Special Advocate Association (NCASAA), an organization that trains and provides volunteer guardians ad litem for use by courts nationwide.[14] Among the responsibilities of a volunteer guardian ad litem are to maintain complete written records about the case, report any incidents of child abuse, interview the parties, including the child, determine if a permanent plan has been developed for the child, assure that the child's best interest is being represented at every stage of the case, attend all hearings, monitor the case by visiting the child as often as necessary to verify that court orders are being followed, participate in formulating the child's permanent plan and remain engaged in the case until discharged by the court.[15] See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1995 Sess., p. 1434.

Further illumination of the role of the guardian ad litem can be found in a publication of the American Academy of Matrimonial Lawyers (Academy) regarding standards for the representation of children in family proceedings. Although those standards focus primarily on the role of counsel for a minor child, in its discussion of guardians ad litem, the Academy espouses the view that the primary task for the guardian ad litem, at trial, is to make the decision maker aware of all the facts and to offer evidence as a sworn witness, subject to

[14] NCASAA, under a cooperative agreement with the office of juvenile justice and delinquency prevention in the United States Department of Justice, was formed to promote the development of Court Appointed Special Advocate—or volunteer guardian ad litem—programs. R. Heartz, "Guardians Ad Litem in Child Abuse and Neglect Proceedings: Clarifying the Roles to Improve Effectiveness," 27 Fam. L.Q. 327, 337 (1993). NCASAA trained volunteer guardians ad litem currently are serving in courts in every state. Id., 328.

[15] NCASAA includes among its recommendations that a guardian ad litem should submit written reports to the court. We find that suggestion troublesome, as we believe it more appropriate that a guardian ad litem testify as a witness, subject to cross-examination.

cross-examination. Those standards also recommend that the guardian ad litem engage in frequent communication with the child, and generally help to expedite the process and to encourage settlement of disputes. American Academy of Matrimonial Lawyers, Representing Children (1995) p. 4. In the Academy's standards, the authors correctly observe that to ensure performance of those functions, the court must notify the guardian ad litem of all conferences and hearings, and make clear to the guardian ad litem his or her obligation to attend all court activities unless excused by the court. Id.

As a general matter, we endorse all of those enumerated functions as a menu of responsibilities from which a trial court may derive specific instructions to a guardian ad litem at the time of his or her appointment.

While helpful in their instructions, the various guidelines for a guardian ad litem or counsel for a minor child offer little guidance to each concerning the delineation of their responsibilities when both are appointed. The absence of either general parameters or case specific directions has the potential to lead to confusion, which is neither in the best interest of a child nor consonant with the efficient use of resources.

Although we understand from the guidance of *Schult* that no bright line can be drawn to delineate, for all cases, the roles of a guardian ad litem and counsel for a minor child, it is useful to observe that the legal rights of a child often may be distinct from the child's best interest, and although there frequently may be overlap between the two, it is only because, in such cases, the rights of a child and the child's best interest coincide.[16] While the best interest of a child encompasses a catholic

---

[16] See also *Ireland* v. *Ireland*, supra, 246 Conn. 439–40. While acknowledging that a distinction between the two roles was proper, the court stopped short of defining the "precise parameters of the functions of the guardian ad litem . . . ." Id., 440.

concern with the child's human needs regarding his or her psychological, emotional, and physical well-being, the representation of a child's legal interests requires vigilance over the child's legal rights. Those legal rights have been enumerated as the right to be a party to a legal proceeding, the right to be heard at that hearing and the right to be represented by a lawyer.[17] When both a guardian ad litem and an attorney have been appointed for a child, their respective roles and the duties attendant to those roles should adhere to that basic distinction. Specifically, the guardian ad litem should refrain from acting as a second attorney for the child. Just as it is not normally the province of the attorney to testify, it is not the province of the guardian ad litem to file briefs with the court.[18]

[17] Quebec Bar Committee, "The Legal Representation of Children: A Consultation Paper Prepared by the Quebec Bar Committee," 13 Can. J. Fam. L. 49, 61–64 (Robin Ward trans.) (1996).

[18] "We do not allow submission of attorneys' personal opinions in other areas of the law and we see no reason to do so in this case." *Ireland* v. *Ireland*, supra, 246 Conn. 438.

Our Supreme Court also emphasized the restricted role of counsel in *Schult*. The court provided the following guidance: "[R]epresentation must be entrusted to the professional judgment of appointed counsel within the usual constraints applicable to such representation." *Schult* v. *Schult*, supra, 241 Conn. 778. "[T]he attorney should honor the strongly articulated preference . . . of a child who is old enough to express a reasonable preference." (Internal quotation marks omitted.) Id., 779. In other words, the attorney should maintain, as closely as possible, a lawyer-client relationship that is as normal as possible. See Rules of Professional Conduct 1.14.

The guidelines for the Court Appointed Special Advocate (CASA) programs; see footnote 14; support that view. The guidelines list the duties that the guardian ad litem should *not* perform: (a) taking home or sheltering a child; (b) *giving legal advice* or therapeutic counseling; (c) making placement arrangements for a child; (d) giving money or expensive gifts to the family or to a child. See footnote 14. "The CASA volunteer does not provide legal representation in the courtroom. That is the role of the attorney. However, the CASA volunteer does provide crucial background information that assists attorneys in presenting their cases. It is important to remember that CASA volunteers do not represent a child's wishes in court. Rather, they speak to the child's best interests." Conn. Joint Standing Committee Hearings, supra, p. 1433; see also American Academy of Matrimonial Lawyers, supra, rule 3.1, p. 4.

The duties of the guardian ad litem, however, are contextually specific to the case at hand, and the scope of those duties should be set by the trial court judge and communicated to the guardian ad litem.[19] Because those duties may subsume those traditionally performed by counsel when counsel is the child's sole representative; see General Statutes § 46b-54 (c); counsel's duties must be similarly articulated by the court.[20]

## III

Although the issues are clouded by the appointment of an attorney as well as a guardian ad litem to represent the interests of the child, S, the absence of an enumerated list of the duties of the guardian ad litem does not prevent us from resolving the issues presented by this case because we conclude that the guardian ad litem supersedes the role of the natural guardian to speak for the child's best interest in the present litigation. In contrast to a guardian of a person who has physical control of the minor or a guardian of an estate who has legal control over the minor's financial affairs, the guardian ad litem is appointed by a court and granted

Although we have observed that a distinguishing of the roles of attorney and guardian ad litem is proper, we find one fundamental overlap in their duties to the child; that is their appearance at all hearings to represent the child's interest in their respective capacities. See R. Heartz, "Guardians Ad Litem in Child Abuse and Neglect Proceedings: Clarifying the Roles to Improve Effectiveness," 27 Fam. L.Q. 327, 341–46 (1993); see also 43 C.J.S. 610, Infants § 234 (1978).

[19] "A guardian ad litem . . . is always subject to the supervision and control of the court, and he may act only in accordance with the instructions of the court." 43 C.J.S. 609, Infants § 234 (1978).

[20] "[A] [t]rial judge who appoints counsel for [a] child in [a] custody matter should tell [the] appointed counsel what is expected since, absent firm guidelines from [the] legislature or other sources, [the] best solution regarding [the] counsel's role appears to lie in precise, clear-cut orders by [the] court after input from counsel." 43 C.J.S. 609, Infants § 234 (1999). We conclude that this is especially true when the court has also appointed a guardian ad litem, and equally true with respect to the duties of the guardian ad litem.

limited powers to represent the interest of the child in a particular court proceeding.[21]

Although it is a question of first impression whether the limited powers of a guardian ad litem usurp a parent's right to speak on behalf of the minor,[22] our Supreme Court has provided us with guidance in related decisions. In *Orsi*, the court opined: "When a guardian has been appointed to protect the interests of a child, the guardian is usually the proper person to bring an action on behalf of the child." *Orsi* v. *Senatore*, supra, 230 Conn. 467; see also *Williams* v. *Cleaveland*, 76 Conn. 426, 56 A. 850 (1904). Although that is the general rule adopted by our courts, it allows for exceptions, such as when the nominal guardian is absent, unwilling or unable to fulfill his or her duties, or there exists a conflict of interest or other " 'exceptional circumstances.' " *Orsi* v. *Senatore*, supra, 467. The court must therefore determine whether such circumstances exist and, if they do, who is best suited to make a claim on behalf of the child. Id.

Furthermore, where the court appoints counsel for a minor child, but no guardian ad litem to speak for the minor, we have concluded that because counsel for the child is more appropriately situated to exercise sound legal judgment, that creates a presumption that the court-appointed counsel is the proper person to fill the role of guardian for a particular legal action, absent an independent guardian ad litem. *Taff* v. *Bettcher*, supra, 35 Conn. App. 428; see also *Lord* v. *Lord*, 44

---

[21] E. Sokolnicki, "The Attorney as Guardian Ad Litem for a Child in Connecticut," 5 Conn. Prob. L.J. (1991); see also 43 C.J.S. 609, Infants § 234 (1978) ("rights and powers of a guardian ad litem . . . are strictly limited to the performance of the precise duties imposed on him by law. Ordinarily, his authority is recognized only for certain specific purposes").

[22] In the Texas case, *Grunewald* v. *Technibilt Corp.*, 931 S.W.2d 593 (Tex. App. 1996), however, the court found that a minor's parents had no standing when a guardian ad litem had been appointed. Id., 596.

Conn. App. 370, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998). In such a situation, if the court wanted to have an adult, other than a parent, speak for the child in a juvenile proceeding, and not merely advocate on behalf of the child, it would be well for the court either to appoint a separate guardian ad litem or to give specific instructions to counsel concerning the limits of his or her responsibilities of advocacy. Reciprocally, if counsel for a minor finds himself or herself in a conflict between advocating for the child's desires and speaking for the child's best interest, counsel should immediately bring that conflict to the court's attention.[23]

On the basis of those allied decisions and amplified by our understanding of the fundamental role of a guardian ad litem, we believe that as between a guardian ad litem and a natural guardian, the presumption should be that the court-appointed guardian ad litem is the proper person to speak for the child for the purposes of the litigation, barring a showing that he or she cannot properly fulfill the guardian ad litem role and that another is better suited to the role. The maternal grandmother has made no showing that the court-appointed guardian ad litem could not fulfill her role, nor has the grandmother alleged that the guardian ad litem has misspoken or that the grandmother was more properly

---

[23] See General Statutes § 46b-129a. The question of when a child can express a reasonable preference is one that is particularly ill-suited to a bright line rule. It is nevertheless a question that requires the trial court's guidance and counsels vigilance. "One view is that a child's ability to make a thoughtful decision depends on his or her abilities to understand, to reason, and to communicate, together with having a set of values. Another recommendation is that the advocate respond differently to the very young child, and the middle child aged seven to fourteen, while allowing the child's wishes to be determinative at age fourteen." R. Heartz, "Guardians Ad Litem in Child Abuse and Neglect Proceedings: Clarifying the Roles to Improve Effectiveness," 27 Fam. L.Q. 327, 335 (1993). The question is best left to the discretion of the trial court and the minor's representatives.

suited to speak on behalf of S's best interest. The facts in the record support the opposite conclusion: The grandmother, who was seeking to act as S's guardian for the purposes of this proceeding, recently had acquiesced to an order of temporary custody removing S from her own custody and was undergoing substance abuse treatment.

From the record, it is apparent that the court weighed those considerations in its ruling. Judge Jones stated: "The court agrees with the position set forth by the commissioner that in [the] circumstances of this case, where the court has appointed a guardian ad litem . . . and given the circumstances under which the child, the young mother [S], was removed from the care of . . . [the maternal grandmother, the grandmother] is not the 'guardian' of the child for the purpose of this proceeding." We agree with the court.

The judgment is affirmed.

In this opinion the other judges concurred.