******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RUTH F. PERRY *v.* STEPHEN C. PERRY
(SC 18942)
(SC 18993)
(SC 18994)

Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued December 5, 2013—officially released July 22, 2014*

*Alexander J. Cuda*, with whom was *Arnold H. Rutkin*, for the plaintiff in error in Docket No. SC 18942, appellant in Docket No. SC 18994, and appellee in Docket No. SC 18993 (Catherine P. Whelan).

*Barbara M. Schellenberg*, with whom was *Richard L. Albrecht*, for the defendant in error in Docket No. SC 18942, appellee in Docket No. SC 18994, and appellant in Docket No. SC 18993 (defendant).

*Opinion*

EVELEIGH, J. The present appeals and writ of error arise from a dissolution action in which Catherine P. Whelan, the plaintiff in error, was appointed as the attorney for the minor children of Stephen C. Perry, the defendant in the dissolution action and the defendant in error, and Ruth F. Perry, the plaintiff in the dissolution action.[1] Whelan brings the writ of error, Docket No. SC 18942, in her personal capacity, and the appeal, Docket No. SC 18994, in her capacity as the attorney for the minor children, claiming that she was entitled to recover the entirety of certain fees that she owed to another attorney, Arnold H. Rutkin, who represented her in a postjudgment proceeding. The defendant filed a separate appeal, Docket No. SC 18993, from the order of the trial court that required him to pay a portion of Rutkin's fees. The two appeals and the writ of error were subsequently consolidated by this court.

Whelan asserts that the trial court improperly: (1) denied the motion for permission to appeal brought in her capacity as the attorney for the minor children; and (2) ordered the defendant to pay only a portion of the reasonable fees for her counsel in the postjudgment dissolution proceeding in which the defendant challenged the fees Whelan charged as attorney for the minor children. Specifically, Whelan claims that she was entitled to recover the entire cost of Rutkin's representation either under General Statutes § 46b-62[2] or as a result of her claim that the defendant had engaged in certain litigation misconduct. In his appeal, the defendant claims that the trial court improperly required him to pay a portion of Rutkin's fees pursuant to § 46b-62.

We conclude that: (1) *Newman* v. *Newman*, 235 Conn. 82, 100, 663 A.2d 980 (1995), should not be overruled and, therefore, an attorney for the minor children in a dissolution action may file an appeal only if the court determines that an appeal is in the best interests of the children; (2) the trial court did not abuse its discretion in concluding that an appeal was not in the best interests of the minor children and, therefore, properly denied Whelan's motion for permission to appeal on their behalf; (3) this court has jurisdiction to hear Whelan's writ of error because she is an aggrieved nonparty pursuant to the requirements of Practice Book § 72-1; (4) § 46b-62 does not authorize an award for the attorney of the attorney for a minor child; and (5) the trial court failed to apply the proper standard to Whelan's claim of litigation misconduct. Accordingly, we affirm the judgment of the trial court as it relates to the denial of Whelan's motion for permission to appeal, and reverse the judgment of the trial court as it relates to both the award of Rutkin's fees pursuant to § 46b-62 and Whelan's claim of litigation misconduct. Consequently, we remand the case with direction to deny Whelan's motion seeking to recover Rutkin's fees pursu-

ant to § 46b-62 and to conduct further proceedings consistent with this opinion on the issue of litigation misconduct.

The relevant facts and procedural history are set forth in the Appellate Court opinion in the related case, *Perry* v. *Perry*, 130 Conn. App. 720, 722–23, 24 A.3d 1269 (2011). "In a complaint filed January 9, 2006, the plaintiff . . . alleged that her marriage to the defendant . . . had broken down irretrievably and sought dissolution of their marriage, an order regarding custody and support of their two minor children, alimony, educational support orders and attorney's fees.[3] The child custody and financial issues were bifurcated for trial. On April 9, 2008, the court, *Dewey, J.*, approved and entered, as an order, a custody and parenting time stipulation (stipulation).

"On August 11 and 12, 2008, a trial was held to resolve the parties' financial issues. During that trial and in her proposed orders, the plaintiff requested that the court correct the custody stipulation, which allegedly had misstated the [defendant's] weekend visitation rights. The defendant did not oppose the plaintiff's request. Indeed, through his attorney, he acknowledged that the stipulation contained a scrivener's error in assigning weekend visitations to the [defendant] for every weekend rather than every other weekend. Furthermore, in response to questioning by the court, the defendant stated, consistently, that he had parenting time with the children every other weekend.

"On November 26, 2008, the court, *Gordon, J.*, rendered judgment dissolving the parties' marriage. The judgment incorporated the *uncorrected* custody stipulation, ordered alimony and child support, divided the parties' assets and ordered that attorney's fees for both parties be paid from a designated brokerage account. In addition, the court ordered the defendant to indemnify the plaintiff for 'any and all future claims, demands and/or suits with respect to any federal, state or municipal income tax claims for any year in which the parties filed a joint income tax return . . . .'

"On July 2, 2009, the plaintiff filed an ex parte motion for an order and to clarify postjudgment, alleging that the defendant had notified her of his intention to begin exercising his visitation rights to have the children every weekend pursuant to the uncorrected custody stipulation. The plaintiff asked the court to clarify its decision to allow her to have parenting time every other weekend, including the weekend of July 3, 4 and 5, 2009. The court, *Schofield, J.*, ordered that the plaintiff have parenting time for that weekend and set a date for a hearing on the clarification issue.

"Thereafter, on July 27, 2009, the plaintiff filed a motion to open on the grounds of a scrivener's error or mutual mistake with respect to the parenting time

as expressed in the stipulation. The plaintiff alleged that, at all times between the institution of the action and July, 2009, the defendant had exercised his right to parenting time with the children every other weekend. Furthermore, she argued that other paragraphs in the stipulation were inconsistent with the defendant's having parenting time every weekend. On January 5, 2010, the defendant filed an objection and motion to dismiss the plaintiff's motion to clarify and to open the judgment.

"At a hearing on the proposed clarification, held on January 5, 2010, the court, *Shay, J.*, determined that the motion for clarification should be addressed to Judge Gordon. In response, on January 25, 2010, Judge Gordon issued a clarification, sua sponte, that the . . . stipulation, as incorporated into the court's November, 2008 memorandum of decision, should have read: 'The minor children shall be with the [defendant] every other Friday from 4:00 p.m. until Sunday at 8:00 p.m.' " (Emphasis in original; footnote added.) Id.

The defendant then appealed to the Appellate Court claiming that the trial court improperly modified the judgment of dissolution by issuing the clarification that the defendant's parenting time should be every other weekend. Id., 723–24. The Appellate Court rejected the defendant's claim and affirmed the judgment of the trial court clarifying the visitation order. Id., 734.[4] During these postjudgment proceedings, Whelan continued to serve as the attorney for the two minor children.

Whelan then filed a motion seeking payment of outstanding fees for the period of May 4, 2009 through November 22, 2010, a retainer going forward and an allowance to participate in the appeal that was then pending before the Appellate Court. The defendant challenged Whelan's fees and costs.

As a result, the trial court held a hearing on the matter. At the hearing, Whelan petitioned the trial court for additional counsel to represent her at the hearing and, in addition to her own fees as the attorney for the minor children, for the fees she would incur to be represented at the hearing to be paid by the parties. After hearing argument from the parties, the trial court granted Whelan's motion for representation, but reserved ruling on the issue of whether it could award the legal fees incurred by her for Rutkin's representation in connection with the hearing.

Whelan was represented by Rutkin during the five day hearing on her fees as the attorney for the minor children. We observe that this appears to be an inordinately long time, particularly when defense counsel initially observed that he needed one hour. Thereafter, the trial court determined that the $33,883.26 outstanding balance of fees was reasonable under all the circumstances. The trial court ordered the defendant to pay

75 percent of the outstanding balance and the plaintiff to pay 25 percent of that balance. The trial court also required the parties to pay Whelan a retainer in the amount of $10,000 for continued representation of the minor children, including participation in the appeal that was then pending before the Appellate Court. The defendant was ordered to pay 75 percent of the retainer and the plaintiff was ordered to pay 25 percent of the retainer.

The trial court conducted a separate hearing related to Whelan's claim that she was entitled to counsel fees to pay for Rutkin's representation. Whelan also moved for sanctions and attorney's fees based on the defendant's litigation abuses and misconduct postjudgment, claiming that the defendant had engaged in bad faith litigation by making a baseless challenge to her fees as the attorney for the minor children. In response, the defendant moved to dismiss Whelan's motion and objected to the imposition of sanctions.

The trial court granted Whelan's motion regarding attorney's fees in part. The trial court determined that under § 46b-62,[5] Whelan was entitled to "a portion of the attorney's fees incurred by her, limited to the defense of her conduct, which the court finds to be within the scope of her core function, with the balance to be absorbed by her as part of the cost of doing business (i.e. the collection of her fee)." The trial court further found that "much of the [defendant's] challenge was, by his own testimony due in large measure to his challenge to [Whelan's] conduct . . . ." Accordingly, the trial court awarded Whelan 40 percent of Rutkin's fees and ordered that sum to be paid by the defendant because he was the only one who challenged Whelan's fees.

The trial court then denied Whelan's motion for sanctions and attorney's fees for alleged litigation abuses and misconduct. As the basis for denying Whelan's motion, the trial court determined that the defendant's conduct did not rise to the level of " 'egregious litigation misconduct' " under *Ramin* v. *Ramin*, 281 Conn. 324, 357–59, 915 A.2d 790 (2007).

Thereafter, Whelan filed a motion for permission to file an appeal on behalf of the minor children. The trial court denied that motion, from which Whelan appealed to the Appellate Court. Whelan then filed the present writ of error before this court. Finally, the defendant appealed to the Appellate Court from the judgment of the trial court ordering him to pay 40 percent of Rutkin's fees. We transferred the appeals pending before the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The writ of error and the two appeals were then consolidated.

I

Whelan first claims that this court should overrule

*Newman* v. *Newman*, supra, 235 Conn. 82, in which this court concluded that an attorney for the minor children in a dissolution action may file an appeal only if the court determines that an appeal is in the best interests of the children. As grounds for her claim, Whelan asserts that this court should reconsider *Newman* because, since that case was decided, this court has recognized that the role of the attorney for the minor children is frequently blurred with that of a guardian ad litem and must always be guided by the best interests of the children. In response, the defendant asserts that *Newman* should not be overruled because its reasoning and rationale is still applicable today. We agree with the defendant.

In *Newman* v. *Newman*, supra, 235 Conn. 83, this court directly considered the issue that Whelan asks us to reconsider today—namely, "whether, in a marriage dissolution case, minor children who are represented by an attorney appointed by the trial court pursuant to General Statutes § 46b-54, but not by a guardian ad litem or next friend, may appeal from a judgment of the trial court . . . ." (Footnote omitted.) In *Newman*, the judgment of the trial court from which the minor children sought to appeal involved the support obligations of the children's parents. Id.

Today, we review the same standards considered in *Newman*. In considering the minor children's claim, this court examined the established principles governing the right to bring an action and appeal in dissolution actions: "The right to appeal is purely statutory, and only an aggrieved party may appeal. *Durso* v. *Misiorek*, 200 Conn. 656, 660, 512 A.2d 917 (1986). In the context of dissolution actions, only those who were parties to the underlying dissolution action may appeal. *Bergeron* v. *Mackler*, 225 Conn. 391, 391–92 n.1, 623 A.2d 489 (1993). Moreover, [o]rdinarily, the term party has a technical legal meaning, referring to those by or against whom a legal suit is brought . . . the party plaintiff or defendant . . . . *Lieberman* v. *Reliable Refuse Co.*, 212 Conn. 661, 669, 563 A.2d 1013 (1989). We implicitly have recognized that definition to exclude the minor children of parents involved in a dissolution action, absent some additional effort to make the children formal parties to that action. *Salvio* v. *Salvio*, [186 Conn. 311, 324, 441 A.2d 190 (1982)]." (Internal quotation marks omitted.) *Newman* v. *Newman*, supra, 235 Conn. 94.

"Furthermore, the general rule is well established that 'a child may bring a civil action only by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented. *Cottrell* v. *Connecticut Bank & Trust Co.*, 175 Conn. 257, 261, 398 A.2d [307] (1978); *Collins* v. *York*, 159 Conn. 150, 153, 267 A.2d 668 (1970). When a guardian has been appointed to protect the interests of a child, the guard-

ian is usually the proper person to bring an action on behalf of the child. *Williams* v. *Cleaveland*, 76 Conn. 426, 434, 56 A. 850 (1904). There are, however, certain exceptional circumstances; *Cottrell* v. *Connecticut Bank & Trust Co.*, supra, 263; when a child may properly sue by next friend, notwithstanding the existence of such guardian, as when the guardian is absent, or is unwilling or unable to institute or prosecute the required action or appeal, and especially when, though declining to take such action himself, he does not forbid such proceeding, or when he is disqualified by interest hostile to that of the infant, or is for other reasons an improper or unsuitable person to prosecute such actions on behalf of the ward. *Williams* v. *Cleaveland*, supra, 432. Although generally a person who brings an action as next friend need not obtain prior authorization from the court to do so; id., 433; *McCarrick* v. *Kealy*, 70 Conn. 642, 646, 40 A. 603 (1898); the court must determine whether the person seeking to represent the child as next friend is a proper or suitable person to make a claim on behalf of the child. *Williams* v. *Cleaveland*, supra, 433–34; *McCarrick* v. *Kealy*, supra, 646.' . . . *Orsi* v. *Senatore*, 230 Conn. 459, 466–67, 645 A.2d 986 (1994)." *Newman* v. *Newman*, supra, 235 Conn. 95. Having examined the established principles regarding a minor child's right to bring an action in the trial court, this court concluded that it saw "no reason not to apply their principles to the right of appeal as well. As a general matter, there is no reason to afford a right of appeal greater than a right to sue in the first instance." Id., 95–96.

In *Newman*, this court then examined the policy concerns surrounding allowing minor children to bring appeals in dissolution actions. In doing so, this court recognized that "absent special circumstances . . . there are good reasons not to consider the minor children as 'parties' to the dissolution action or to require that they formally be made such parties. Treating the children as parties might well force them to choose sides and thus threaten to exacerbate their already heavy emotional burden, and would add a level of participation—even if only symbolic in most cases—that is inconsistent with a wise attempt to shield them as much as reasonably possible from the legal aspects of their parents' conflicts." (Citation omitted.) Id., 96.

On the other hand, in *Newman*, this court also recognized that "[a]lthough they are not parties to the underlying dissolution action, it cannot be denied that our statutes and precedents regarding the appointment of an attorney to represent their interests in dissolution proceedings do constitute legislative and judicial recognition that the orders entered by the trial courts in such proceedings may affect those interests." Id., 97.

On appeal, Whelan encourages us to overrule *Newman* on the ground that its holding requiring an attorney

for the minor children to seek permission of the court to file an appeal is no longer supported by the current understanding of the role of an attorney for the minor children. Specifically, Whelan asserts that this court has recently recognized that the role of the attorney for the minor children and the role of a guardian ad litem have been blurred by recent precedent, requiring the attorney for minor children to consider the best interests of the children. In support of her position, Whelan cites *Carrubba* v. *Moskowitz*, 274 Conn. 533, 546–47, 877 A.2d 773 (2005), in which this court stated as follows: "Of course, we recognize that such attorneys perform a hybrid role because of their simultaneous duty to function as an advocate for the child. That function, however, must always be subordinated to the attorney's duty to serve the best interests of the child. Even when an attorney for the minor child functions less as a guardian ad litem and more as an advocate because of factors such as the child's advanced age, maturity level and ability to articulate her preferences, the shifting of the balance from an objective evaluator of the child's best interests to personal advocate happens because those factors increase the likelihood that the child is able accurately to identify and to make choices to pursue her own best interests independently, without the aid of an objective assistant to the court. Thus, even the advocacy role of the appointed attorney for the minor child may be reconciled with the attorney's primary duty—to assist the court in serving the best interests of the child."

First, it is important to note that the discussion in *Carrubba* was in the context of whether an attorney for minor children was entitled to quasi-judicial immunity. Id., 535. Therefore, in describing the function and role of the attorney for the minor child, the court in *Carrubba* was focused on the similarities to judicial officers and to what extent the attorney for the minor child serves the court. Second, the understanding of the role of an attorney for the minor children expressed in *Carrubba* is not inconsistent with the concerns expressed in *Newman*. In *Newman* v. *Newman*, supra, 235 Conn. 96, this court reasoned as follows: "Additionally, we are concerned about creating conflict in the attorney's role by conflating the role of counsel for a child with the role of a guardian ad litem or next friend. Typically, the child's attorney is an advocate for the child, while the guardian ad litem is the representative of the child's best interests. As an advocate, the attorney should honor the strongly articulated preference regarding taking an appeal of a child who is old enough to express a reasonable preference; as a guardian, the attorney might decide that, despite such a child's present wishes, the contrary course of action would be in the child's long term best interests, psychologically or financially." In *Carrubba* v. *Moskowitz*, supra, 274 Conn. 547, this court stated: "[W]e see no reason to

accord appointed attorneys for minor children a lesser level of immunity than that traditionally accorded to guardians ad litem, at least in the performance of those functions that are integral to the judicial process." Both *Newman* and *Carrubba* recognize that, in certain circumstances, an attorney for the minor children must put the best interests of the children over his or her role as advocate for the minor children, particularly where children are not mature enough to make such decisions on their own.

Moreover, nothing in the rule established in *Newman*, requiring the trial court to determine that an appeal is in the best interests of the minor children, negates the recognition that an attorney for the minor children must consider the best interests of the minor children. It is merely another safeguard in the system designed to protect the interests of the minor children in a situation that "carries with it significant risks of widening the fissures in an already sorely tried family . . . ." *Newman* v. *Newman*, supra, 235 Conn. 96.

"This court has repeatedly acknowledged the significance of stare decisis to our system of jurisprudence because it gives stability and continuity to our case law. . . . The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and . . . is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Citation omitted; internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 519, 949 A.2d 1092 (2008). On the basis of our review of *Newman* and its in-depth consideration of the competing policy considerations involved in allowing an attorney for the minor children to appeal, we cannot conclude that the most cogent reasons and inescapable logic require us to overrule *Newman*. To the contrary, we conclude that, in *Newman*, this court struck the appropriate balance between the rights of minor children to appeal and this court's well reasoned concerns regarding such appeals. Accordingly, we decline Whelan's invitation to overrule *Newman*.

II

Whelan next claims that, even if this court does not overrule *Newman*, the trial court in the present case improperly denied the children's motion for permission to appeal. Specifically, Whelan claims that the trial court improperly determined that it was not in the best interests of the minor children to appeal from the trial court's judgment regarding fees for her attorney. In response,

the defendant claims that the trial court did not abuse its discretion in denying the attorney for the minor children's request for permission to appeal because it properly determined that such an appeal was not in the best interests of the children. Specifically, the defendant asserts that the trial court properly determined that the appeal would be adverse to the children's interests and was too remote. We agree with the defendant.

We begin by setting forth the appropriate standard of review for considering Whelan's claim. As this court explained in *Newman* v. *Newman*, supra, 235 Conn. 100 n.17, "if in a given case the trial court granted or denied the minor children's request to prosecute an appeal without either a guardian ad litem or next friend, that grant or denial would be subject to review on appeal under an abuse of discretion standard." See also id., 104.

In *Newman* v. *Newman*, supra, 235 Conn. 103–104, this court stated as follows: "Finally, we turn to the nature of the trial court's considerations in determining whether to authorize an appeal under the standards that we have articulated. Without attempting to limit the trial court's examination of all of the available facts and circumstances regarding whether to authorize an appeal by minor children from a trial court support order, we suggest the following as some of those factors: the nature of the particular trial court order at issue; whether there is likely to be an appeal of the order, irrespective of that requested by the minor children; the desires of the parent who would otherwise be an appellant but who does not intend to file such an appeal, and the reasons for that intention; whether the particular risks that underlie the general rule are likely to be realized by permitting such an appeal in the particular case; the potential for conflicts to arise between the best interests of the children and their desire to prosecute the appeal; the good faith of the attorney making the request for such an appeal on behalf of the children; the degree to which an appeal will unduly drain resources that could be better spent on the children; and whether there is any reasonable basis for such an appeal. We emphasize that this list is not exhaustive. The range of factors to be considered by the trial court is limited only by the applicable standard of the best interests of the children."

In the present case, the trial court reasoned as follows: "I have the Supreme Court telling me you have to make a finding of [the children's] best interest[s]. I am struggling to do that because I believe it is too remote. This is not a question of fighting over health insurance for the children or the actual child support payment for the children, something affecting their education, something affecting their medical treatment. . . . I said [Whelan gets 40] percent [of Rutkin's fees]. So this appeal is over the [60] percent I didn't award

to [Whelan]. And that I found had to do with a collection . . . . So I am struggling to find that in the best interest[s] of the child[ren]. . . . It's not a seminal issue involving . . . these children. And it is a substantial amount of money that is likely to impact the money that could go toward these children, to their education, to their welfare. It is going to get sucked right out of a family that is not, you know, they are not making millions. . . . Income is a challenge to both parties in this case, at least it was in terms of the evidence that I adduced. So I am going to deny the motion."

Our review of the trial court's denial of Whelan's motion for permission to appeal demonstrates that the trial court properly considered factors enumerated in *Newman* v. *Newman*, supra, 235 Conn. 103–104. Specifically, the trial court considered the nature of the trial court order at issue, the potential for conflicts to arise between the best interests of the children and their desire to prosecute the appeal, and the degree to which an appeal would unduly drain resources that could be better spent on the children. We conclude, therefore, that the trial court considered the proper factors and did not abuse its discretion in concluding that the appeal was not in the best interests of the minor children.

### III

Having concluded that the trial court did not abuse its discretion in denying Whelan's motion for permission to appeal, we next consider whether this court has jurisdiction to consider her writ of error. Whelan claims that if this court affirmed the judgment of the trial court denying her motion for permission to appeal, this court would have jurisdiction to consider her claim to her right to Rutkin's counsel fees pursuant to a writ of error under Practice Book § 72-1. In response, the defendant claims that a writ of error is not proper in the present case because it would effectively negate the trial court's decision. We agree with Whelan.

Practice Book § 72-1 (a) provides: "Writs of error for errors in matters of law only may be brought from a final judgment of the superior court to the supreme court in the following cases: (1) a decision binding on an aggrieved nonparty; (2) a summary decision of criminal contempt; (3) a denial of transfer of a small claims action to the regular docket; and (4) as otherwise necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law."

We first address whether the trial court's order regarding Rutkin's fees is an appealable final judgment because it implicates this court's subject matter jurisdiction over Whelan's writ of error. See, e.g., *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("[b]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from

a final judgment before considering the merits of the claim"). We conclude that the trial court's order regarding Rutkin's fees constitutes an appealable final judgment under *Curcio*.

"*Curcio* is the foundational case governing whether an otherwise interlocutory order is appealable. A trial court's ruling may be appealed if it (1) 'terminates a separate or distinct proceeding,' or (2) 'so concludes the rights of the parties that further proceedings cannot affect them.' *State* v. *Curcio*, supra, 191 Conn. 31. Writs of error may be brought only from a final judgment of the trial court; Practice Book § 72-1 (a); and, therefore, *Curcio* must be satisfied." *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 757, 48 A.3d 16 (2012). "In order to satisfy the second prong of the *Curcio* test the [plaintiff in error] must do more than show that the trial court's decision threatens [her] with irreparable harm. . . . For an interlocutory order to be an appealable final judgment it must threaten the preservation of a right that the [plaintiff in error] *already holds*. The right itself must exist independently of the order from which the appeal is taken." (Citation omitted; emphasis added; internal quotation marks omitted.) *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 448, 645 A.2d 978 (1994).

In the present case, Whelan has filed a writ of error challenging the trial court's order regarding Rutkin's fees, which totaled $55,576. Specifically, the trial court ordered the defendant to pay 40 percent of the counsel fees, totaling $22,230, and required Whelan to be responsible for the remaining 60 percent of her counsel's fees, totaling $33,346.

The trial court also, however, ordered the plaintiff and the defendant to pay Whelan $33,883.26 for services she rendered as the attorney for the minor children. By ordering the defendant to pay only 40 percent of Rutkin's fees, Whelan was left to pay the balance of $33,346. Whelan reasons that, therefore, for the period during which she was representing the children and Rutkin was representing her, she would only recover $537.26 of what the court determined that she was legally entitled to.

Under the *Curcio* analysis, Whelan had an existing legal right to her own fees, independent of the order for Rutkin's fees that she is appealing. The trial court's order regarding Rutkin's fees substantially impaired that right because, in her view, it effectively reduced the legal fees awarded to her during the period that she represented the children. See *State* v. *Curcio*, supra, 191 Conn. 34 (to succeed under second prong, appellant must "make at least a colorable claim that some recognized statutory or constitutional right is at risk"). Whelan could not vindicate her right to her own fees for representing the children in a separate proceeding

should Rutkin sue her to recover his fees. Accordingly, the second prong of *Curcio* is satisfied.

Having concluded that Whelan's claim satisfies the second prong of *Curcio*, we must now address whether it meets the other requirements of Practice Book § 72-1 (a) (1)—namely, that it is "a decision binding on an aggrieved nonparty . . . ." "It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. . . . There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features." (Citations omitted.) *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91–92, 971 A.2d 1 (2009).

"Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 156, 953 A.2d 1 (2008).

In the present case, the trial court denied Whelan's request to require the defendant to pay the entirety of Rutkin's fees. As previously stated in this opinion, because the trial court denied this request, Whelan was obligated to pay Rutkin $33,346 of the $33,883.26 in fees she received for serving as the attorney for the minor children during the postdissolution proceedings.

This court recently considered and granted a similar writ of error in *Francis* v. *Fonfara*, 303 Conn. 292, 33 A.3d 185 (2012). In that case, this court considered a writ of error by a marshal for fees she charged for copies of a complaint handled in connection with her service of process in a civil action pursuant to General Statutes § 52-261 (a) (2), despite the fact that she did not personally make the copies. Id., 293–94. Although this court did not directly address whether the marshal was aggrieved by the trial court's denial of those fees, its consideration and granting of the writ of error indicates that it considered the marshal to be an aggrieved nonparty and to have met the requirements for a writ of error under Practice Book § 72-1.

Similar to the marshal in *Francis* v. *Fonfara*, supra, 303 Conn. 292, Whelan was an aggrieved nonparty who met the requirements of Practice Book § 72-1. Therefore, we conclude that this court has jurisdiction to consider Whelan's writ of error.

IV

Whelan claims that the trial court improperly determined that she was responsible for part of Rutkin's fees under § 46b-62. Specifically, Whelan claims that the trial

court improperly required her to pay 60 percent of Rutkin's fees, which she incurred due to meritless claims by the defendant. Whelan further asserts that the trial court's determination threatens the independence of the attorney for the minor children. In his appeal, the defendant asserts that the trial court improperly required him to pay any of Rutkin's fees and that § 46b-62 does not authorize such an award.[6] We agree with the defendant and, accordingly, reverse the judgment of the trial court as it relates to the award of Rutkin's fees under § 46b-62.

Our analysis of these claims requires us to interpret § 46b-62. We first set forth our standard of review. "The issue in this case . . . raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [we] first . . . consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Sams* v. *Dept. of Environmental Protection*, 308 Conn. 359, 377–78, 63 A.3d 953 (2013).

As this court pointed out in *Fennelly* v. *Norton*, 294 Conn. 484, 504–505, 985 A.2d 1026 (2010), § 46b–62 is in derogation of the common law. Specifically, "its enactment in 1973 represented a departure from the common-law American rule followed in Connecticut, including in family matters cases, under which 'attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception.' . . . *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 148, 943 A.2d 406 (2008); see also *Murphy* v. *Murphy*, 180 Conn. 376, 380, 429 A.2d 897 (1980). Thus, 'we are mindful of other rules of statutory construction applicable when determining whether a statute has abrogated the common law. [W]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction.

. . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope.' . . . *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 724, 949 A.2d 1189 (2008); cf. *Levesque* v. *Bristol Hospital, Inc.*, 286 Conn. 234, 262, 943 A.2d 430 (2008) ('costs are a creature of statute, and, therefore, a court may not tax a cost unless it is clearly empowered to do so . . . because statutes in derogation of the common law are to be strictly construed' . . .)." *Fennelly* v. *Norton*, supra, 504–505.

With these principles in mind, we turn to the text of the statute. Section 46b-62 provides: "In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-212 to 46b-213w, inclusive, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the compensation of the attorney shall be established and paid by the Public Defender Services Commission."

We conclude that the language of the statute is plain and unambiguous. Section 46b-62 only allows for the payment of the fees for the attorney for the minor child. The statute does not contain any language regarding counsel hired by the attorney for the minor child. Indeed, the language of § 46b-62 does not even seem to contemplate that an attorney for a minor child may hire his or her own counsel during any proceedings under the statute. "[I]t is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly; e.g., *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 729, 6 A.3d 763 (2010); or to use broader or limiting terms when it chooses to do so. See, e.g., *Stitzer* v. *Rinaldi's Restaurant*, 211 Conn. 116, 119, 557 A.2d 1256 (1989)." *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183, cert. denied,      U.S.    , 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012). Therefore, the fact that the legislature only included language allowing for payment of fees for the attorney for the minor children indicates that the legislature did not intend to allow payment for counsel hired by the attorney for the minor children.

We next turn to a related rule of practice, Practice Book § 25-62A, which provides in relevant part: "The judicial authority may order compensation for services rendered by an attorney for a minor child." Like the plain language of § 46b-62, Practice Book § 25-62A only contains language related to services by the attorney for the minor children, and does not contain any language related to counsel hired by the attorney for the minor children. Therefore, the text of Practice Book § 25-62A also supports the conclusion that a court may only award fees for the attorney for a minor child and not fees for counsel hired by the attorney for a minor child.

Whelan asserts that a court must have authority to award fees for counsel hired by an attorney for the minor children under § 46b-62 in order to protect the independence of attorneys for minor children. Specifically, Whelan claims that requiring an attorney for a minor child to absorb the costs of counsel hired to assist her in recovering her reasonable attorney's fees would interfere with her role as the attorney for minor the children. Although we recognize that Whelan's concern is a real one, we are obligated to strictly construe § 46b-62. See *Location Realty, Inc.* v. *Colaccino*, supra, 287 Conn. 724. Although it may be good public policy to ensure that attorneys for minor children will not be forced to incur expense to recover their fees, "the strict construction applied to attorney's fee statutes in derogation of the common-law . . . requires us to defer to the legislature's policy making authority on this matter." (Citations omitted.) *Fennelly* v. *Norton*, supra, 294 Conn. 504 n.17. This rule of statutory construction further buttresses our holding that the language of the statute itself is plain and unambiguous.

On the basis of the forgoing, we conclude that § 46b-62 does not provide for fees for counsel for the attorney for the minor children and, accordingly, we reverse the portion of the judgment of the trial court that orders the defendant to pay a portion of the fees Whelan incurred as the result of hiring her own counsel.

V

We next turn to the claims related to litigation misconduct. First, the defendant claims, as an alternative ground for affirmance, that Whelan lacked standing to bring a claim of litigation misconduct. Whelan claims that the trial court improperly applied the standard set forth in *Ramin* v. *Ramin*, supra, 281 Conn. 324, to her claim for counsel fees. Specifically, Whelan asserts that the trial court should have applied the standard set forth in *Maris* v. *McGrath*, 269 Conn. 834, 850 A.2d 133 (2004), to her claim of litigation misconduct. In response, the defendant asserts that, even if the trial court applied the wrong standard to Whelan's claim of litigation misconduct, it was harmless because the record did not support a finding that the defendant

acted in bad faith. We agree with Whelan.

### A

We begin by considering the defendant's claim that Whelan lacked standing to bring a claim of litigation misconduct in the present case because that issue implicates our subject matter jurisdiction. See, e.g., *Soracco* v. *Williams Scotsman, Inc.*, supra, 292 Conn. 90.

It is well established that, "[i]f a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, supra, 288 Conn. 155.

This court has explained that "[s]tanding is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214, 982 A.2d 1053 (2009). "[S]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Canty* v. *Otto*, 304 Conn. 546, 556, 41 A.3d 280 (2012). "These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, supra, 288 Conn. 155. "Standing [however] requires no more than a colorable claim of injury . . . ." (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 411, 35 A.3d 188 (2012).

"It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction." *Soracco* v. *Williams Scotsman, Inc.*, supra, 292 Conn. 91. As we explained in part III of this opinion, "[t]here are two general types of aggrievement, namely, classical and statutory; either

type will establish standing, and each has its own unique features." Id., 92.

As we explained in part III of this opinion, in the present case, the trial court denied Whelan's request to require the defendant to pay the entirety of Rutkin's fees. As a result, Whelan was obligated to pay Rutkin $33,346 of the $33,883.26 of her fees for proceedings in which she claims the defendant committed litigation misconduct. On the basis of this fact, we conclude that Whelan has standing to pursue her claim of litigation misconduct.

B

We next turn to Whelan's claim that the trial court improperly applied the standard set forth in *Ramin* v. *Ramin*, supra, 281 Conn. 324, to her claim of litigation misconduct.

As we recently explained in *Berzins* v. *Berzins*, 306 Conn. 651, 657, 51 A.3d 941 (2012), "[t]he question of whether *Ramin* applies to [nondiscovery litigation misconduct related to claims for attorney's fees under § 46b-62] is a 'question of law subject to our plenary review.' *Fish* v. *Fish*, 285 Conn. 24, 37, 939 A.2d 1040 (2008)."

Although our opinion in *Berzins* v. *Berzins*, supra, 306 Conn. 657, was not available to the trial court at the time it ruled on Whelan's claim of litigation misconduct in the present case, we find it dispositive of Whelan's claim before this court. We note, however, that *Maris* v. *McGrath*, supra, 269 Conn. 845–46, the case upon which *Berzins* was based, was available to the trial court at the time of the hearing. In *Berzins*, the defendant appealed from the judgment of the Appellate Court affirming the trial court's award of attorney's fees to the plaintiff, claiming that the trial court improperly relied on *Ramin*. *Berzins* v. *Berzins*, supra, 653. We concluded that the trial court's award of attorney's fees based on nondiscovery litigation misconduct was not governed by *Ramin*, but that the trial court should have been guided by *Maris* v. *McGrath*, supra, 845–46. *Berzins* v. *Berzins*, supra 658–59. Specifically, we concluded that *Ramin* was limited to discovery misconduct and did not apply to postjudgment litigation misconduct. Id.

As we explained in *Berzins* and previously in this opinion, " '[t]he common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception.' . . . *Commissioner of Environmental Protection* v. *Mellon*, [286 Conn. 687, 695, 945 A.2d 464 (2008)]. One such exception is the inherent authority of a trial court 'to assess attorney's fees when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.' *Schoonmaker* v.

*Lawrence Brunoli, Inc.*, [265 Conn. 210, 253, 828 A.2d 64 (2003)]." *Berzins* v. *Berzins*, supra, 306 Conn. 661.

"We most recently explained the narrow scope of this exception in *Maris* v. *McGrath*, supra, 269 Conn. 848, in which we upheld a trial court's determination that attorney's fees should be awarded to the defendant because the trial court had found both that the case was 'wholly without merit' and that 'the plaintiff repeatedly had testified untruthfully and in bad faith.' We reiterated principles that this court previously had articulated indicating that a litigant seeking an award of attorney's fees for the bad faith conduct of the opposing party faces a high hurdle. Specifically, quoting our previous decision in *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999), we stated: 'We agree, furthermore, with certain principles articulated by the Second Circuit Court of Appeals in determining whether the bad faith exception applies. To ensure . . . that fear of an award of [attorney's] fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes . . . and a high degree of specificity in the factual findings of [the] lower courts. . . . Whether a claim is colorable, for purposes of the bad-faith exception, is a matter of whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts had been established. . . . To determine whether the bad-faith exception applies, the court must assess whether there has been substantive bad faith as exhibited by, for example, a party's use of oppressive tactics or its wilful violations of court orders; [t]he appropriate focus for the court . . . is the conduct of the party in instigating or maintaining the litigation.' . . . *Maris* v. *McGrath*, supra, 845–46." *Berzins* v. *Berzins*, supra, 306 Conn. 662–63. "*Maris* makes clear that in order to impose sanctions pursuant to its inherent authority, the trial court must find *both* that the litigant's claims were entirely without color *and* that the litigant acted in bad faith." (Emphasis in original.) Id., 663.

In the present case, the trial court explicitly indicated that it was considering Whelan's claim of litigation misconduct under the legal principles enunciated in *Ramin*. Indeed, the trial court never mentioned *Maris* in its memorandum of decision. Therefore, the trial court did not make the required findings under *Maris* and, consequently, Whelan is entitled to a new hearing at which the trial court applies the proper standard.

The judgment in SC 18994 denying Whelan's motion for permission to appeal on behalf of the minor children

is affirmed; the judgment in SC 18993 granting in part Whelan's motion for her attorney's counsel fees pursuant to § 46b-62 is reversed and the case is remanded with direction to deny that motion; the writ of error in SC 18942 is granted in part, the judgment denying Whelan's motion for counsel fees and sanctions for litigation misconduct is reversed, and the case is remanded for further proceedings on that motion in accordance with the preceding paragraph; the writ of error in SC 18942 is denied in all other respects.

In this opinion the other justices concurred.

[1] For the sake of simplicity, we refer to Ruth F. Perry as the plaintiff, Stephen C. Perry as the defendant, and to Whelan by name. We note that the plaintiff is not a party to this appeal.

[2] Although § 46b-62 was the subject of technical amendments in 2011; see, e.g., Public Acts 2011, No. 11-214, § 7; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] We note that Whelan was appointed as the attorney for the minor children on September 20, 2006.

[4] The defendant also appealed from the judgment of the trial court granting the plaintiff's motion for clarification as to the division of the parties' property. *Perry* v. *Perry*, supra, 130 Conn. App. 729. The Appellate Court reversed the judgment of the trial court as it related to the plaintiff's motion for clarification as to the division of the parties' property. Id., 734.

[5] General Statutes § 46b-62 provides: "In any proceeding seeking relief under the provisions of this chapter and sections 17b-743, 17b-744, 45a-257, 46b-1, 46b-6, 46b-212 to 46b-213w, inclusive, 47-14g, 51-348a and 52-362, the court may order either spouse or, if such proceeding concerns the custody, care, education, visitation or support of a minor child, either parent to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of the attorney or may order the payment of the attorney's fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the compensation of the attorney shall be established and paid by the Public Defender Services Commission."

[6] The defendant also asserts that the trial court's decision refusing to order him to pay a portion of Rutkin's fees should be affirmed on the alternative ground that the trial court had no authority under § 46b-62 to order him to pay any of those fees. Because we resolve the issue raised in the defendant's appeal regarding § 46b-62 in his favor and determine that § 46b-62 does not authorize the award of any portion of Whelan's counsel's fees, we need not address the defendant's alternative ground for affirmance.